May Term,
1847.

HIESTAND
v.
KUNS.

HIESTAND and Others *v.* KUNS.

A minor retains the domicil of his parents; and he cannot generally, *proprio marte*, change that domicil during his minority.

*A.*, a female of about nine years of age, who was domiciled in *Ohio* and whose parents were dead, was, against the will of her guardian there, brought into this state by *B.*, who procured himself here to be appointed her guardian; the age of majority of a female being eighteen in *Ohio* and twenty-one here. *A.* continued in this state until she was eighteen, and then made choice of it as her permanent home. *Held*, that *A.'s* domicil was thus changed from *Ohio* to this state, and that her age of majority then depended on the law here. *Held*, also, that she could not afterwards in this state, whilst she was under twenty-one, appoint an attorney, or make a settlement with *B.*, her guardian, which would be binding on her or her heirs.

The said *B.*, after his said ward became domiciled here as aforesaid, and before she was twenty-one, was instrumental in the sale of her real estate for her in *Ohio*, the proceeds of which he received and brought into this state. *Held*, that he was chargeable, as guardian of *A.*, for said proceeds; and that his payment of them to her before she was twenty-one, would not excuse him from accounting here for the same to the proper authority.

ERROR to the *Carroll* Probate Court.

PERKINS, J.—This was a bill in chancery in the *Carroll* Probate Court, brought by a guardian, *Jacob Kuns*, praying a decree, confirming a settlement alleged to have been made with his deceased ward, *Rosanna Hiestand*, and releasing him from further liability on account of her estate. The bill was against the administrator and heirs of the ward. The cause was submitted to the Court on bill, answers, and depositions, and a final decree rendered for the plaintiff. The case is as follows:

In 1827, the above-named *Rosanna Hiestand*, then about nine years of age, was living with the plaintiff, *Jacob Kuns*, her uncle by marriage, in *Montgomery* county, *Ohio*, where her parents had lived and died. She was the heir to both personal and real estate. In the year mentioned, and while *Rosanna* was living with the plaintiff, *Kuns*, Samuel *Hiestand*, her uncle by consanguinity, and a resident of the same county with her, was appointed by the proper Court in *Ohio* her guardian. Soon after his appointment, he attempted to obtain possession of *Rosanna's* person, but was prevented from doing so by the plaintiff, *Kuns*, who, wishing to retain her in his own charge, secreted her. A short time

Monday,
May 24.

subsequently to this occurrence, *Kuns* moved to *Carroll* county in this state, bringing *Rosanna* clandestinely with him. Soon after his arrival in the county, being in 1828, he procured from the Probate Court thereof letters of guardianship upon her person and estate; and from that time to her death she continued to reside in his family, working for him as children usually work for parents. She died in 1838, intestate and under twenty-one years of age.

*Kuns* possessed himself, as her guardian, of upwards of 1,000 dollars arising exclusively from her personal effects. She inherited lands also, as has been stated, in *Ohio;* and in *March*, 1836, being then eighteen years of age, and having, by the law of *Ohio*, reached majority, she executed in this state, to her said guardian, a power of attorney to sell those lands. *Kuns* sold the lands, receiving therefor in cash, and notes payable to himself, 4,187 dollars. *Rosanna* executed in this state and forwarded to the purchasers deeds pursuant to his contracts of sale.

In *June*, 1836, after receiving the consideration of the lands sold, *Kuns* made a settlement with *Rosanna*, at which he alleges he paid over to her all moneys and effects of every description held by him as her guardian, agent, or attorney, and was released by her from all further liability on account thereof; and he states that he never after resumed the possession or control of her property, though *Rosanna* continued as a member of his family. The *data* of that settlement, the receipts and vouchers connected with it, are not given, and, as is alleged, cannot be; the former being forgotten, and the latter having all been burned at the time by *Rosanna* as being of no further use.

The property of *Rosanna* reported by *Kuns* to her administrator on her decease, which happened about two years after the alleged settlement, amounted to 1,050 dollars, thus leaving upwards of 4,000 dollars of the principal together with all the interest of her estate, supposing her labour to have been of value equal to her necessary expenses, to have been squandered by, as the proof is, an economical girl living in the family of her uncle in about two years' time.

*Kuns* asks in his bill that the above-mentioned settlement may be decreed valid and binding, unless its correctness shall

be impeached by the opposite party; and that he may be discharged by a decree of the Court from all further liability as guardian, agent, or attorney, on account of his transactions with *Rosanna's* property.

The Court below decreed accordingly, without proof further than of the simple facts of a settlement having been made, and a something having been delivered to *Rosanna* thereat. The Judge based his decree on two grounds, each relating to a different part of the fund in controversy. That portion received by *Kuns* from sources other than the sale of real estate, he balanced against the expenses of the guardianship and the amount reported to *Rosanna's* administrator, (though the latter item consisted mostly of land that may have been purchased with proceeds of the sale of the real estate in *Ohio;*) and that portion derived from the sale of real estate, he held to have been received by *Kuns* as attorney and not as guardian, and that as to it, *Rosanna* was acting *sui juris,* she having by the law of *Ohio* attained to her majority, and therefore as to that, her settlement was to be presumed fair and valid; and her right at that time, to the possession and use of the money, he held complete.

We may here remark, that if it be true that *Kuns* is chargeable, not as guardian, but as attorney, with the proceeds of the sale of said real estate, a point might well be made as to the authority by which the Probate Court assumed jurisdiction to make any decree in regard to those proceeds. But we will not stop now to consider of this. In ascertaining whether the decree of the Court below was right or wrong, the first question to be determined is, was the domicil of *Rosanna Hiestand,* after her arrival at eighteen years of age, in *Ohio* or in *Indiana?* The child takes the domicil of the parent, and cannot, as a general rule, while under age, *proprio marte,* change that domicil; nor is the power of the guardian to effect such change unlimited. Story's Confl. of Laws, 44.—2 Kent, 227, note. It may, therefore, well be doubted whether any change had taken place in *Rosanna's* domicil prior to her becoming eighteen years old. If not, then at that age she was still under the law of *Ohio,* and by it became at that time of

age, and capable of choosing a domicil for herself. We are satisfied from the evidence upon the record that she did then make such choice; that she did then determine to make *Indiana* her future permanent abode; and there thus being a concurrence of actual "residence and intention of making it the home of the party," the domicil here, according to *Story*, was complete. Story's Confl. of Laws, 42.

The next question to be determined is, what was the personal capacity of *Rosanna* after having changed her domicil from *Ohio* to this state? Having by the law of *Ohio* obtained majority the moment she was eighteen years old, and having at the same moment passed out from under the jurisdiction of that law and come in under the jurisdiction of that of this state, where majority is not reached till the age of twenty-one, did she, at the same instant, become *sui juris* by the law of *Ohio*, and *non sui juris* by the law of *Indiana?* There is a conflict in the views of juridical writers on this question; but the conclusion to which Mr. *Story*, on a review of their works, has arrived, is in favour of the affirmative of this question. He says that the doctrine which is most generally approved is, "that, upon a change of domicil, the capacity or incapacity of the person is regulated by the law of the new domicil. *Pothier*, as we have seen, lays down this rule in emphatic terms. 'The change of domicil,' says he, 'delivers persons from the empire of the laws of the place of the domicil they have quitted, and subjects them to those of the new domicil they have acquired.'" Story's Confl. of Laws, 67. This doctrine seems to us to best accord with public convenience. *Rosanna*, then, was an infant as to all acts performed in this state from the time she was eighteen years of age till her decease.

This fact at once lays out of the case the power of attorney to *Kuns*, for an infant cannot create an attorney; and also the pretended settlement, for, if an *infant* can state an account, the heirs of as well as the infant may avoid it. Nor are we prepared to say that this settlement could have been deemed *prima facie* correct, even had *Rosanna* been at the time *sui juris*. Hill on Trustees, 156.

The principal remaining question is, whether *Kuns* is pro-

perly chargeable as guardian with the proceeds of the sale of the real estate. He is surely chargeable with them in some capacity; and without inquiring whether, in any case, a distinction might be made in the duties of a guardian in relation to different parts of a ward's personal property at any time existing in this state (and the money received on the sale of these lands was such), or intending to lay down a general rule as to the liability of guardians, or to indicate an opinion as to the liability of *Kuns's* sureties in this case, we may say, that we do not think it lies in his mouth, after bringing *Rosanna* into this state against the will of her constituted guardian in *Ohio*, procuring himself to be appointed her guardian under our laws, and being instrumental in changing her real estate into personal, that it might be removed into this jurisdiction, to refuse to be held accountable here according to the principles governing the office into which he thrust himself. There are in law constructive as well as actual guardians. See, as bearing on this case, *Mellish* v. *Mellish*, 1 Sim. & Stu. 138.—*Revett* v. *Harvey*, id. 502.—*Sherman* v. *Ballou*, 8 Cowen, 304.—Hill on Trustees, 156.—6 Ves. 276.—3 M. & K. 135.

No question can arise in this case upon the validity of the conveyance ,of the lands in *Ohio*. Even could *Kuns,* were it void, take advantage of that fact, as to which we give no opinion, it is sufficient to say the conveyance was voidable only, and being acquiesced in the title is valid (1).

*Kuns,* then, being properly chargeable as guardian with this money, it follows that he must account for it to the rightful authority. Can the paying it over, supposing *Kuns* hereafter to show it to have been done, to the minor nearly three years before she came to majority, be regarded as such an accounting? Can the guardian protect himself from responsibility for its loss by simply showing it to have been so paid? If so, the appointment of guardians and the establishing of Courts to watch over them are very vain proceedings. It seems to us as clearly waste for a guardian to hand over the effects of his ward to such ward to be wasted, as for the guardian to waste them himself. Such an act, if done with impunity, would surely defeat the whole object of the guardianship. We conclude, then, that this pretended settlement

is not shown to have been any accounting, nor the pretended payment any discharge; and that the plaintiff is now liable to account for and pay over the property of his ward, agreeably to the rules applicable to those persons who are intrusted with the care of the interests of such as are incompetent to take care of themselves.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*D. D. Pratt, C. Fletcher, O. Butler,* and *S. Yandes,* for the plaintiffs.

*O. H. Smith* and *W. Wright,* for the defendant.

(1) The capacity of persons to take or transfer real estate depends on the law of the country where the estate is situate. Thus, whether an alien can take land, or whether a person is of sufficient age to transfer the same by deed or by will, are questions which must be determined by the law of the *situs.* So, also, in the conveyance or transfer of real estate, either testamentary or *inter ôivos,* the forms and solemnities required in such cases by the *lex loci rei sitæ* must be followed. So, also, the law of the *situs* exclusively governs as to the descent and heirship of real estate. Story's Confl. of Laws, ch. 4, 10, 11, 12.—2 Kent's Comm. 429.—4 *id.* 441, 513.—*Watkins* v. *Holman et al.* 16 Peters, 25, 57.—*Calloway et al.* v. *Doe d. Joyes,* 1 Blackf. 372, and note.