SECRETARY OF STATE *v.* McGUCKEN

ALBAUGH *v.* SECRETARY OF STATE

(Two Appeals in One Record)

[No. 353, September Term, 1966 (Adv.).]

*Decided, per curiam, August 22, 1966.*

*Opinion filed September 21, 1966.*

The cause was argued before PRESCOTT, C. J. and HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*Thomas P. Perkins, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Robert C. Murphy, Deputy Attorney General,* and *Edward L. Blanton, Jr., Assistant Attorney General,* on the brief, for the Secretary of State.

William A. Albaugh, *pro se,* for one of the appellants.

*Frank B. Walsh, Jr.,* for Patrick F. X. McGucken, an appellee.

HORNEY, J., delivered the opinion of the Court.

When the Secretary of State refused to certify William A. Albaugh as a Republican candidate for Governor and Patrick F. X. McGucken as a Democratic candidate for Congress from the Sixth Congressional District of Maryland in the primary election to be held on September 13, 1966, because the respective candidates failed to appoint a campaign treasurer pursuant to § 213 (a) of Article 33 of the Code (1965 Cum. Supp.), the gubernatorial candidate filed a petition for summary judgment and an injunction in an effort to have his name placed on the ballot. Subsequently, the congressional candidate filed a petition for a writ of mandamus and obtained an order allowing him to intervene in the pending case filed by the gubernatorial candidate.

Judge E. Mackall Childs, in an opinion and order filed on August 15, 1966, directed the Secretary of State to certify McGucken as a candidate for Congress, but declined to order a certification of Albaugh as a candidate for Governor. The Secretary of State entered an appeal to this Court forthwith in the McGucken case, and Albaugh did likewise a week later. Arguments on appeal were heard on August 22, 1966, and on the same day we filed a *per curiam* order wherein we affirmed the order of the lower court with respect to William A. Albaugh and reversed the order with respect to Patrick F. X. McGucken. We state below the reasons for our action.

### The Albaugh Case

Candidate Albaugh filed his certificate of candidacy as a Re-

publican candidate for Governor on November 2, 1965. Early in July 1966, he was advised by the Secretary of State that he should promptly appoint a campaign treasurer. In reply he stated that he would not appoint a treasurer and informed the Secretary that he had "spent about $200 so far and expect[ed] to spend about $1000 before the primary election." When he was notified on August 1, 1966, that he must appoint a treasurer prior to the certification date of August 3, he filed suit. Therein he alleged, among other things, that he had no intention of appointing a treasurer.

In his certificate of candidacy, the candidate stated under oath that he had been a citizen of the State of Maryland for a period of eight years and a resident for ten years. At the hearing before Judge Childs, he stated that he had been a citizen of the State for twelve years, but he offered no testimony with regard to either citizenship or residency. And in an affidavit filed with his motion seeking to have the lower court reconsider its decision that he was not qualified to be a candidate for Governor, he stated that he had been a citizen for more than ten years and that he had continuously resided in the State for the last five years.

On appeal, Albaugh contends that § 213 (a) of Article 33 is in conflict with § 5 of Article II of the Constitution of Maryland pertaining to the eligibility of a person to be Governor and that his certificate of candidacy shows that he was a qualified candidate for that office.

Since the candidate cited *Hellman v. Collier,* 217 Md. 93, 141 A. 2d 908 (1958), to support the first contention, he appears to claim that the statute, requiring candidates for office to appoint a campaign treasurer, had the effect of imposing another qualification for the office of Governor in addition to those set forth in the Constitution. We do not agree. On the contrary, it is obvious that the statute, which is a part of the Corrupt Practices Act, was intended to do no more than enhance the effectiveness of those regulations requiring a full disclosure of the financial aspects of the campaign of a candidate for office. Clearly the Act, including § 213 (a) thereof, has no bearing on the eligibility of a candidate for office.

With respect to whether the certificate of candidacy disclosed

that the candidate had the requisite qualifications for the office of Governor, Albaugh contends that the only reasonable interpretation of the certification—

> "That I am over 30 years of age and have been a citizen of the State of Maryland for the past eight years, and I have resided therein for more than ten years next preceding this election and that I am a qualified voter therein,"

is that the words "for the past eight years" indicate the extent of his "continuous residence" and that the words "for more than ten years" indicate the length of his "discontinuous total citizenship." The contention is wholly without merit. There is no ambiguity (as the candidate claims) in the wording of the quoted part of the certificate of candidacy. Rather, the wording is a clear and unequivocal paraphrase of the constitutional provision.[1] Ordinarily the word "citizen" connotes an inhabitant or permanent resident, and while the words "citizen" and "resident" as used in some contexts may be synonymous, as they were held to be in *Crosse v. Board of Supervisors of Elections,* 243 Md. 555, 221 A. 2d 431 (1966) and in *Dorsey v. Kyle,* 30 Md. 512 (1869), it is apparent that the citizenship and residential requirements of the constitutional provision under consideration are not synonymous; nor are the requirements interchangeable. In this instance, since the certificate of candidacy shows on its face that Albaugh had not been a citizen of Maryland for the requisite ten year period, he was clearly not qualified to be a gubernatorial candidate.

### The McGucken Case

Candidate McGucken filed his certificate of candidacy for the Democratic nomination as a representative in Congress from the Sixth Congressional District on June 3, 1966. During July

---

1. Section 5 of Article II provides:
    "A person to be eligible to the office of Governor, must have attained the age of thirty years, and must have been for ten years a citizen of the State of Maryland, and for five years next preceding his election, a resident of the State, and, at the time of his election, a qualified voter therein."

of 1966, the Secretary of State notified the candidate twice to promptly file the name of his campaign treasurer. On August 1, 1966, a telegram was sent to the candidate advising him that the Secretary was required to certify candidates on August 3 and that if he was not advised of the name and address of the candidate's treasurer at once, the name of the candidate would not be certified. On August 8, 1966, the candidate advised the Secretary that he had appointed Robert A. Seidel as his campaign treasurer. After consulting the Office of the Attorney General, the Secretary notified the candidate that he was unable to certify him, and the candidate filed suit.

The only questions we need consider on appeal are whether the Secretary of State was required to certify a candidate who had failed to appoint a campaign treasurer pursuant to the requirements of § 213 (a) of Article 33 and whether that section violates the Constitution of the United States with regard to the qualifications of a candidate for Congress.

Section 213 (a) of Article 33 provides:

> "Each candidate for nomination for, or election to, public office, upon filing as such candidate or within seven (7) days thereafter shall appoint one campaign treasurer and shall file the name and address of the campaign treasurer with the clerk of the circuit court of the county or Baltimore City in which the candidate resides or, if he is a candidate for State-wide office or representative in Congress, with the Secretary of State."

The Secretary of State contends that a candidate must appoint a campaign treasurer within seven days or at least within a reasonable time thereafter in order to be certified as a candidate for public office. Citing a *nisi prius* decision filed in the Circuit Court for Baltimore City on July 18, 1966, in the case of *Kelmartin, et al. v. Curran,* wherein it was held that, although the statutory requirement was mandatory, a candidate was only required to file the name of his treasurer within a reasonable time in order for his name to be placed on the ballot and that the ultimate cutoff date would be not later than the time when the name of the candidate should be placed on

the ballot or set up in the election machines, the Secretary of State further contends that the cutoff date in this instance was forty days prior to the primary, or August 3, 1966, after which date he was not required by law to certify a candidate who had failed to appoint a campaign treasurer. McGucken, on the other hand, contends that the Secretary of State lacked authority to refuse to certify a candidate, even a belated one, who had complied with the provisions of the statute.

With respect to the mandatory or declaratory character of the time requirement, we need not decide in this case whether a candidate must appoint a campaign treasurer within the time specified in the statute or within a reasonable time thereafter; nor what would be a reasonable time in a case such as this. For, assuming that the statutory requirement as to the time is declaratory, we think it is obvious that under the facts of this case the failure of McGucken to appoint a treasurer before he did was unreasonable by any standard. Cf. *Andrews v. Secretary of State,* 235 Md. 106, 200 A. 2d 650 (1964), with respect to congressional candidates filing their certificates of candidacy within the prescribed time limit. Also see *Chamberlain v. Supervisor of Elections,* 212 Md. 342, 129 A. 2d 121 (1957).

Regarding a candidate for Congress, we are also of the opinion that § 213 (a) does not violate the Federal Constitution in any way. The contention that the section is unconstitutional because it constitutes an additional qualification for office beyond those set out in Article I, Section 2, Clause 2 of the Constitution of the United States is without merit.[2] As stated in the preceding *Albaugh* case, the Corrupt Practices Act has no bearing on the eligibility of a candidate for office. Moreover, neither the State nor Federal Corrupt Practices Act begin to operate until after a candidate has filed for office. For this reason the instant case is clearly distinguishable from both *Shub v. Simpson,* 196 Md. 177, 76 A. 2d 332 (1950) and *Hellman v. Collier, supra,* relied on by McGucken. Moreover, Article I, Section 4, Clause 1 of the United States Constitution specifically provides that the "manner of holding elections" for Representa-

---

2. See also Article I, Section 5, Clause 1, which provides in part that the House of Representatives "shall be the Judge of the Elections, Returns and Qualifications of its own Members."

tives (as well as Senators) shall be prescribed by the State Legislature subject to Congress enacting preemptive legislation with respect thereto. And while Congress, pursuant to the "manner of holding elections" clause, has enacted a Federal Corrupt Practices Act, the term "election" therein is specifically defined to exclude primary elections.[3] Other than this the Federal Act expressly provides that it "shall not be construed to annul the laws of any State relating to the nomination or election of candidates, unless directly inconsistent with the provisions of [the law] or to exempt any candidate from complying with such State laws."[4] Clearly § 213 (a), requiring the appointment of a campaign treasurer, does not impose additional qualifications for congressional candidates. *Cf. Barnes v. State ex rel. Pinkney*, 236 Md. 564, 204 A. 2d 787 (1964). Nor does it violate any provision of the federal constitution or federal law enacted pursuant thereto.

---

3. See Title 2 U.S.C.A. § 241(a) (1964 Pocket Part).
4. See Title 2 U.S.C.A. § 254 (1964 Pocket Part).