**STATE ELECTION BOARD, Appellant (Defendant Below),**

v.

**Evan BAYH, Appellee (Plaintiff Below).**

No. 73S01–8804–CV–380.

Supreme Court of Indiana.

April 28, 1988.

David F. McNamar, Michael R. Franceschini, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellant.

John P. Price, Jon D. Krahulik, Grace M. Curry, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee.

SHEPARD, Chief Justice.

The question is whether Secretary of State Evan Bayh presently meets our Constitution's residency requirement for the office of Governor. We hold that he does.

This dispute began in the newspapers and made its way into the legal system when Governor Robert D. Orr asked the State Election Board to resolve the matter. The Governor appointed an independent chairman to take his place on the Board for the purpose of investigating the validity of Bayh's declaration of candidacy. As the Board began its investigation, Bayh filed this action for declaratory judgment.

The people of Indiana have been well served because both the Governor and the Secretary of State sought a prompt resolution of the issue of Bayh's eligibility. This preempted the unseemly possibility of a later *quo warranto* action challenging Bayh's residency should he become governor. *See State ex rel. Sathre v. Moodie,* 65 N.D. 340, 258 N.W. 558 (1935) (sitting governor removed from office by late *quo warranto* action). Our judgment today cannot be collaterally attacked in a later proceeding. *Oviatt v. Behme* (1958), 238 Ind. 69, 147 N.E.2d 897.

The Board moved to dismiss the action, arguing that declaratory judgment should not be an alternative to exhaustion of administrative remedies and judicial review. The trial court denied the Board's motion to dismiss. In response, the Board petitioned this Court for a writ of prohibition and mandamus to enjoin the trial court from exercising jurisdiction. We denied the writ as prayed by the Board but also prohibited the trial court from enjoining the Board in any of its customary duties, such as deciding a candidate's eligibility for placement on the ballot. *State ex rel. State Election Board v. Superior Court of Marion County* (1988), Ind., 519 N.E.2d 1214. The Board deferred to the trial court, and the matter went to trial.

After hearing evidence, the trial court concluded that Bayh met the constitutional residency requirement. Specifically, the court found that Bayh has been domiciled in Indiana since his birth and had not intended to abandon his Indiana domicile and establish his domicile elsewhere. We granted transfer to review the trial court's determination of this important question pursuant to Appellate Rule 4(A)(10), Ind. Rules of Appellate Procedure.

## I. Facts of the Case

Judge Charles O'Connor entered extensive and careful findings of fact. They have been most helpful. On review, this Court will accept the trial court's findings of fact as long as there is probative evidence in the record to support them. *Melloh v. Gladis* (1974), 261 Ind. 647, 309 N.E.2d 433. The findings which support the trial court's judgment are as follows.

Evan Bayh was born in Terre Haute, Vigo County, Indiana, on December 26, 1955. He lived with his parents in Shirkieville, Indiana, while his father worked the family farm. In September of 1958, the family rented the farm, and Bayh moved with his parents to Bloomington, Indiana, where they lived for three years while Bayh's father was attending law school. When Bayh's father graduated in May 1961, Bayh and his family moved to Terre Haute. Bayh's father was elected to represent Indiana in the United States Senate in November of 1962. He was re-elected to the Senate in 1968 and 1974. During his father's tenure in office, Bayh lived with his parents in Washington, D.C.

When Bayh reached the age of eighteen, he registered to vote in Vigo County, Indiana. He voted there in every primary election, except one in 1978, and in every general election since he became a qualified voter. He never voted in a primary or

general election conducted in the District of Columbia or in any other state. Bayh also registered with the federal Selective Service office in Vigo County after his eighteenth birthday. After graduating from high school, he attended Indiana University in Bloomington, paying in-state tuition from August 1974 through his graduation in May 1978.

In August 1978, Bayh enrolled in the University of Virginia Law School, where he paid non-resident tuition. He took a leave of absence from law school to return to Indiana to serve as chairman of his father's senatorial re-election campaign committee in 1980. After the campaign, Bayh returned to law school, worked as a law clerk at the Washington, D.C., law firm of Hogan & Hartson during the summer of 1981, and received his law degree in January 1982.

Bayh took and passed the District of Columbia bar examination in February 1982. From March 1982 until March 1983, he clerked for the Honorable James Noland, Judge of the United States District Court for the Southern District of Indiana. During that year, George Carneal offered him a position at Hogan & Hartson to begin after his clerkship with Judge Noland. Bayh took and passed the Indiana bar examination in February 1983. During his clerkship with Judge Noland, Bayh had several conversations with business acquaintances and friends concerning his impending employment with Hogan & Hartson. Bayh intended that the move would be temporary and said his objective there was gaining additional legal experience before returning to Indiana.

Bayh joined Hogan & Hartson in July 1983. Paul Rogers, a senior member of the firm who was instrumental in hiring him, viewed Bayh's position with the firm as temporary. Bayh signed a one-year lease for an apartment in Washington. He has never owned real estate in Washington. In August 1983, approximately a month after arriving in D.C., Bayh returned to Indiana to be sworn in as a member of the bar of this Court. He signed an affidavit of intent to practice law in Indiana within two years.

During his sixteen months at Hogan & Hartson, Bayh demonstrated his intent to retain his domicile in Indiana on many occasions. He made frequent trips to Indiana, including attending the Indiana Democratic Editorial Association convention in August 1983 and again in August 1984. He subscribed to daily delivery of the *Indianapolis Star*, sent Christmas cards to Indiana Democratic Party officials, paid Indiana State Bar Association dues, and contributed to the Indiana Democratic State Central Committee. He voted in the Democratic primary election in 1984, campaigned on behalf of the Democratic gubernatorial candidate, participated in the Democratic State Convention in June, and voted in the November general election. He filed Indiana and federal tax returns in April 1984. On December 1, 1984, Bayh returned to Indiana to work for his father's law firm in Indianapolis. He has remained in Indiana since then.

## II. Standard of Review

The trial court made numerous findings of fact, and concluded that the ultimate facts were in favor of Bayh. We will neither reweigh the evidence nor reassess the credibility of the witnesses and will not set aside the fact-finding of the trial court unless it is clearly erroneous. *In re Wardship of B.C.* (1982), Ind., 441 N.E.2d 208. The trial court will not be reversed on the evidence unless there is a total lack of supporting evidence or the evidence is undisputed and leads only to a contrary conclusion. *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797, 798. Under this standard of review, we must first interpret the Indiana Constitution's residency requirement for the office of Governor.

## III. Residence as Domicile

■ The Indiana Constitution requires that gubernatorial candidates be residents of the state for the five years preceding the election. The specific constitutional language provides:

No person shall be eligible to the office of Governor ... who shall not have been five years a citizen of the United States

and also a resident of the State of Indiana during the five years next preceding his election....

Ind. Const. art. V, § 7 (1851). The framers left us little to discern their intention about the meaning of the phrase "resident of the State." The history of this provision, the purpose of the residency requirement, and the caselaw defining residence in other contexts lead us to interpret "resident of" in art. V, § 7 to mean domiciliary.

The Northwest Ordinance of 1787 had a residency requirement for the Governors of territorial governments. A similar requirement became part of the state constitution when Indiana joined the United States. The first Indiana Constitution provided that the Governor "shall have been a citizen of the United States ten years, and have resided in the State five years next preceding his election; unless he shall have been absent on the business of the State, or of the United States...." Ind. Const. art. IV, § 4 (1816). At the 1850 constitutional convention, a delegate suggested that the residency requirement be deleted but the proposal failed. *Journal of the Convention of the People of the State of Indiana to Amend the Constitution* 537 (1851). The convention did move the two exceptions relating to absence on business of the State or of the United States to the provisions on suffrage. Ind. Const. art. II, § 4 (1851).

In framing the issue, we are not interpreting the word "reside" but rather construing the present phrase "resident of" in contrast to the prior phrase "resided in" found in the 1816 constitution. The concept recognized by the phrase "resident of" was utilized in lieu of the combination of "resided in" with the express exception for out-of-state government service. It could reasonably be concluded that by eliminating the out-of-state government service exclusion but adopting "resident of" instead of "resided in" language, the 1851 Constitution embraced a pure domicile theory.

Only two state supreme courts have found constitutional durational residency provisions to require continual physical presence. Both cases involved state constitutions requiring the gubernatorial candidate be both a citizen of the state and a resident of the state. *Ravenel v. Dekle*, 265 S.C. 364, 218 S.E.2d 521 (1975); *Secretary of State v. McGucken*, 244 Md. 70, 222 A.2d 693 (1966). In each case, the court read residency to require continuing physical presence because any other interpretation would have made the requirement mere surplusage to the requirement of state citizenship. *Ravenel*, 265 S.C. at 375–376, 218 S.E.2d at 527; *McGucken*, 244 Md. at 74, 222 A.2d at 695–696. The Indiana Constitution requires the gubernatorial candidate be a citizen of the United States and a resident of the state. We therefore have no reason to conclude from the constitutional language that residency requires continual physical presence.

A constitutional provision for eligibility for office must be interpreted in light of its democratic purposes. Our system of government favors an informed electorate choosing from a range of qualified candidates. It works best on the basis of maximum rather than minimum participation in democracy.

The durational residency requirement insures both an informed electorate and a knowledgeable candidate. Voters are assured of the opportunity to scrutinize the candidate and observe for themselves the candidate's conduct, character, philosophy, and experience in government. The residency requirement also insures that candidates have had the opportunity to acquaint themselves with the people of Indiana and a sufficient stake in the state they wish to govern. Using traditional legal notions of domicile as a way of determining a candidate's status as a "resident of the State" furthers these purposes.

The concept of domicile insures that a candidate is sufficiently familiar with the state without placing undue limitations on the voters' right to select the candidate of their choice. Such an interpretation of the residency requirement allows voters to consider the candidate's relationship to the state and judge his or her familiarity with its citizens and the issues confronting them.

These purposes differ from those advanced by laws requiring a public officer to reside within the political subdivision he serves. Physical presence is necessary to retain office once elected. Such a requirement is intended to make the public officer accessible and responsive. In this context, we have held that a public officer abandons his office when he physically removes himself from the state. *See Relender v. State* (1898), 149 Ind. 284, 49 N.E. 30 (construing constitutional requirement that county officers "reside within their respective counties").

In other contexts, we have interpreted residence to mean domicile. In construing residency under the provisions of the tax assessment law, we noted, "The word 'domicil' is not used in our constitution." *Culbertson v. Board of Commissioners of Floyd County* (1876), 52 Ind. 361, 366. We examined the constitutional residency requirements for voters and office holders, including the office of Governor, and concluded: "The words 'inhabitant' and 'resident,' 'reside' and 'resided,' are used as synonymous [sic]." *Id.* at 366.

We determined that for purposes of "the enjoyment of a privilege, or the exercise of a franchise, ... domicile and residence are deemed to be equivalent or synonymous, i.e. that the word residence is deemed to mean domicile." *Board of Medical Registration and Examination v. Turner* (1960), 241 Ind. 73, 79, 168 N.E.2d 193, 196 (construing licensing statute). We have interpreted residence to mean domicile in a variety of other circumstances. *State ex rel. Flaugher v. Rogers* (1948), 226 Ind. 32, 77 N.E.2d 594 (school admission); *Croop v. Walton* (1927), 199 Ind. 262, 157 N.E. 275 (taxpayer residency); *State ex rel. White v. Scott* (1908), 171 Ind. 349, 86 N.E. 409 (eligibility of county office holders); *Maddox v. State* (1869), 32 Ind. 111 (voter eligibility).

### IV. The Meaning of Domicile

██ Domicile means "the place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning." *Turner*, 241 Ind. at 80, 168 N.E.2d at 196. Domicile can be established in one of three ways: "domicile of origin or birth, domicile by choice, and domicile by operation of law." *Croop*, 199 Ind. at 271, 157 N.E. at 278. The domicile of an unemancipated minor is determined by the domicile of his parents. *Hiestand v. Kuns* (1847), 8 Blackf. 345.

██ Once acquired, domicile is presumed to continue because "every man has a residence somewhere, and ... he does not lose the one until he has gained one in another place." *Scott*, 171 Ind. at 361, 86 N.E. at 413. Establishing a new residence or domicile terminates the former domicile. A change of domicile requires an actual moving with an intent to go to a given place and remain there. "It must be an intention coupled with acts evidencing that intention to make the new domicile a home in fact.... [T]here must be the intention to abandon the old domicile; the intention to acquire a new one; and residence in the new place in order to accomplish a change of domicile." *Rogers*, 226 Ind. at 35–36, 77 N.E.2d at 595–96.

A person who leaves his place of residence temporarily, but with the intention of returning, has not lost his original residence. *Yonkey v. State* (1866), 27 Ind. 236. We have said:

> Where an old resident and inhabitant, having his domicil from his birth in a particular place, goes to another place or country, the great question whether he has changed his domicile ... will depend mainly upon the question, to be determined from all the circumstances, whether the new residence is temporary or permanent.... If the departure from one's fixed and settled abode is for a purpose in its nature temporary, whether it be business or pleasure, accompanied with an intent of returning ... as soon as such purpose is accomplished; in general, such a person continues to be an inhabitant ... for all purposes of enjoying civil and political privileges, and of being subject to civil duties.

*Culbertson*, 52 Ind. at 368–69 (quoting Chief Justice Shaw's opinion in *Sears v.*

*City of Boston,* 42 Mass. (1 Met.) 250 (1840)).

■ Residency requires a definite intention and "evidence of acts undertaken in furtherance of the requisite intent, which makes the intent manifest and believable." *In re Evrard* (1975), 263 Ind. 435, 440, 333 N.E.2d 765, 767. A self-serving statement of intent is not sufficient to find that a new residence has been established. *See Rogers* 226 Ind. at 36–37, 77 N.E.2d at 596. Intent and conduct must converge to establish a new domicile.

■ The question of residence is "a contextual determination to be made by a court upon a consideration of the individual facts of any case." *Evrard,* 263 Ind. at 440, 333 N.E.2d at 768. Physical presence in a place is only one circumstance in determining domicile. *Culbertson,* 52 Ind. at 368.

### V. Conclusion

■ The trial court was correct that, as a matter of law, residence means domicile for purposes of art. V, § 7 of the Indiana Constitution.

The trial court also found that Bayh's original domicile was Indiana. The court determined that Bayh did not intend to abandon his Indiana domicile and establish a new, permanent residence elsewhere. It found that this intention was evidenced by acts consistent with retaining domicile in Indiana. While there was conflicting evidence on these questions, the record supports the court's conclusion that Bayh's residence for the five years next preceding the November 1988 election was Indiana and that he is eligible for the office of Governor.

The judgment of the trial court is affirmed.

All Justices concur.