## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2018, 7:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jessie Laudig, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 31, 2018 <br><br> Court of Appeals Case No. <br> 49A02-1712-CR-2857 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Grant W. Hawkins, Judge <br><br> Trial Court Cause No. <br> 49G05-1703-F5-10775 |

**Bailey, Judge.**

# Case Summary

Following a bench trial, Jessie Laudig ("Laudig") was convicted of Failure to Register as a Sex or Violent Offender, as a Level 5 felony.[1] Laudig now appeals, challenging the sufficiency of the evidence supporting his conviction.

We reverse.

# Facts and Procedural History

On March 22, 2017, the State charged Laudig with Failure to Register as a Sex Offender, as a Level 6 felony, alleging, in pertinent part, that Laudig, "having registered homeless, failed to register at least once every seven (7) days." App. Vol. II at 20. The State also alleged that the offense should be elevated to a Level 5 felony because of a prior conviction for failure to register. Laudig waived his right to a jury, and a bench trial was conducted in October 2017.

At trial, there was evidence that Laudig had been living in a "tent city" in an area of Indianapolis known as "the Jungle." On August 18, 2016, Laudig had signed a detailed registration form containing, among other things, a physical description and a photograph. The form had "Annual" handwritten at the top, and contained this address: "KOWEBA ST/JUNGLE RIGHT SIDE OF THE PARKING LOT AT THE END RED/GRAY TENT INDIANAPOLIS, IN

---

[1] Ind. Code § 11-8-8-17(a)(4), -17(b).

46204." Ex. Vol. at 41. For several weeks thereafter, approximately every seven days, Laudig signed a form indicating that he still lived at that address.

[5] On September 21, 2016, Laudig signed a change form, and specified that he was now living in an alley near a particular intersection. On September 29, 2016, Laudig signed another change form, which stated that he was again living in the Jungle; the address he provided was: "98 South Koweba/the Jungle Right side of parking lot." *Id.* at 35. About every seven days thereafter, Laudig signed a form indicating that he was still living at that address. Then, on December 7, 2016, Laudig submitted another change form in which he again provided the "98 S Koweba" address, but specified that he had moved from a red and black tent to a blue tent with a silver tarp. *Id.* at 38. Thereafter, Laudig signed a registry form approximately every seven days, indicating that he lived at the same address. After signing the form on January 12, 2017, Laudig did not register again within the next seven days, which led to the State filing the instant charges in March of 2017.[2]

[6] The State adduced testimony from Christopher Jaussaud ("Jaussaud"), who was employed by the Marion County Sheriff's Office. Jaussaud testified that he was assigned to look into Laudig's duty to register after Laudig did not again

---

[2] There was evidence that, around late March or early April of 2017, the Jungle was cleared out and those living there were relocated. At trial, the State did not direct evidence or argument toward whether Laudig failed to register by not updating his address after relocating from the Jungle. Rather, the State focused on the time period identified in the charging information—that is, whether, Laudig failed to register again within seven days of January 12, thereby committing a crime "[o]n or about January 20, 2017." App. Vol. II at 20.

register. Jaussad did not go look for Laudig at the provided address because there was "not enough time" and it was "too big of an area." Tr. Vol. II at 23. Jaussaud testified that he was "familiar with where the Jungle was," *id.* at 20, and described the location as a "stretch of trees" east and west of Koweba— near East Washington Street and the railroad—an area that constituted a "homeless camp," *id.* at 21.

[7] The court heard argument concerning whether Laudig was statutorily obligated to register every seven days or could register less frequently. Laudig argued that he was subject to annual registration and was therefore "not required to register again until January of 2018 if he were still living at the Jungle." *Id.* at 57. The court ultimately found that Laudig was guilty of the elevated offense, and imposed a four-year suspended sentence with three years of probation.

[8] Laudig now appeals.

# Discussion and Decision

[9] When reviewing a challenge to the sufficiency of evidence supporting a conviction, we neither reweigh evidence nor judge witness credibility; instead we consider only the evidence and the reasonable inferences that favor the judgment of conviction. *Leonard v. State*, 80 N.E.3d 878, 882 (Ind. 2017). Moreover, to the extent that a sufficiency challenge involves statutory interpretation, we review questions of law *de novo*. *See Edmonds v. State*, 100 N.E.3d 258, 261 (Ind. 2018). We will ultimately affirm the conviction if there is

probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Leonard*, 80 N.E.3d at 882.

[10] The State charged Laudig under Indiana Code Section 11-8-8-17(a)(4). In relevant part, this section reads as follows: "A sex or violent offender who knowingly or intentionally . . . fails to register in person as required under this chapter . . . commits a Level 6 felony." I.C. § 11-8-8-17(a). The State also alleged that the offense should be elevated to a Level 5 felony based on a prior conviction, pursuant to Indiana Code Section 11-8-8-17(b).

[11] Laudig does not dispute his status as a sex or violent offender, or his pertinent prior conviction. Laudig also appears to concede that he failed to register again within seven days of January 12, 2017. Laudig instead asserts that he satisfied his registration requirement by providing the address of the Jungle, and was not statutorily required to register every seven days during the relevant timeframe.

[12] A sex or violent offender who resides in Indiana is obligated to register, I.C. § 11-8-8-7(a), which means to "report in person to a local law enforcement authority and provide" certain information, I.C. § 11-8-8-4. "A sex or violent offender resides in Indiana if . . . [t]he sex or violent offender spends or intends to spend at least seven (7) days (including part of a day) in Indiana during a one hundred eighty (180) day period." I.C. § 11-8-8-7(a)(1). Further, "[a] sex or violent offender who resides in Indiana shall register with the local law enforcement authority in the county where the sex or violent offender resides." I.C. § 11-8-8-7(b). Indiana's registry statutes recognize three types of in-state

residences: (1) a principal residence, (2) a temporary residence, and (3) a residence that is neither a principal residence nor a temporary residence. *See* I.C. §§ 11-8-8-8(a)(1), -12(b), & -12(c).

# Principal Residence

[13] In general, a registration must include, among other things, the "sex or violent offender's . . . principal residence address." I.C. § 11-8-8-8(a)(1). Furthermore, "a sex or violent offender who is required to register . . . shall, at least one (1) time every three hundred sixty-five (365) days . . . (1) report in person to the local law enforcement authority; (2) register; and (3) be photographed by the local law enforcement authority." I.C. § 11-8-8-14. However, "[i]f a sex or violent offender . . . changes . . . principal residence address . . . the sex or violent offender shall report in person to the local law enforcement authority . . . not more than seventy-two (72) hours after the address change." I.C. § 11-8-8-11.

# Temporary Residence

[14] Yet, if a "sex or violent offender . . . resides in a temporary residence," the individual must register more frequently. I.C. § 11-8-8-12(b). A "'temporary residence' means a residence (1) that is established to provide transitional housing for a person without another residence; and (2) in which a person is not typically permitted to reside for more than thirty (30) days in a sixty (60) day period." I.C. § 11-8-8-12(a). When the sex or violent offender resides in a temporary residence, the individual "shall register in person" within seventy-

two hours of moving into the temporary residence, and then register "at least once every seven (7) days" thereafter. I.C. § 11-8-8-12(b).

## No Principal or Temporary Residence

[15] If, however, "[a] sex or violent offender . . . does not have a principal residence or temporary residence," then the individual "shall report in person . . . at least once every seven (7) days to report an address for the location" where the individual "will stay during the time in which [he] . . . lacks a principal address or temporary residence." I.C. § 11-8-8-12(c).

[16] It is undisputed that Laudig reported in person in early 2017, and signed a form indicating that he still lived at the address for the Jungle. Based upon the foregoing statutes, if the Jungle was Laudig's "principal residence," then Laudig was not required to report in person every seven days, as he would if he had a different type of residence. *See* I.C. §§ 11-8-8-14(a), 11-8-8-11(a). We must, then, determine the meaning of "principal residence." Our legislature has provided the following definition:

> As used in this chapter, 'principal residence' means the residence where a sex or violent offender spends the most time. The term includes a residence owned or leased by another person if the sex or violent offender:
>
> (1) does not own or lease a residence; or
>
> (2) spends more time at the residence owned or leased by the other person than at the residence owned or leased by the sex or violent offender.

I.C. § 11-8-8-3.

[17] The State does not dispute that Laudig was living in the Jungle, and the evidence indicates that Laudig spent most of his time there. Thus, we must consider whether living in a tent in the Jungle constitutes a *residence*. Our legislature has not provided an independent definition for "residence" in the context of sex or violent offender registration.

[18] "When construing a statute our primary goal is to ascertain the legislature's intent." *Suggs v. State*, 51 N.E.3d 1190, 1194 (Ind. 2016). "[W]e look first to the statutory language itself and give effect to the plain and ordinary meaning of statutory terms." *Id.* "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004) (quotation marks omitted). "Only if the text is ambiguous do we turn to the canons of statutory construction, guided by the goal of discerning and effectuating the intent of the legislature." *J.D.M. v. State*, 68 N.E.3d 1073, 1077 (Ind. 2017). Nonetheless, "criminal statutes must be strictly construed against the State, and may not be enlarged beyond the fair meaning of the language used." *Suggs*, 51 N.E.3d at 1194 (quotation marks omitted). Moreover, "the rule of lenity . . . requires us to interpret ambiguous criminal statutes 'in the defendant's favor as far as the language can reasonably support.'" *Calvin v. State*, 87 N.E.3d 474, 478-79 (Ind. 2017) (emphasis removed) (quoting *Day v. State*, 57 N.E.3d 809, 813 (Ind. 2016)).

[19]     The State directs us to the following definition for "residence" contained in Indiana Code Section 3-5-2-42.5: "'Residence' means the place: (1) where a person has the person's true, fixed, and permanent home and principal establishment; and (2) to which the person has, whenever absent, the intention of returning." Relying upon this definition, the State argues that "[t]he tent that Laudig stayed in was neither 'fixed' nor 'permanent,'" and that "it could have been blown away by a gust of wind."[3] Appellee's Br. at 9. Yet, the State provides no explanation for why this definition of residence—which is contained in Title 3, a title pertaining to elections—applies to a statute in Title 11, which instead pertains to corrections. *Compare* I.C. § 3-5-2-42.5 *with* I.C. § 11-8-8-3. Furthermore, in a different statute in Title 3, our legislature expressly provided that definitions in Title 3 apply "throughout this title." I.C. § 3-5-2-1. Moreover, in other contexts, when our legislature has intended to invoke the definition of residence contained in Title 3, it has done so by providing a clear cross-reference to that statutory definition. *See, e.g.*, I.C. § 31-34-18-6.1 (specifying, in matters involving Children in Need of Services, that certain steps need not be taken when the child will be placed in "an entity or a facility that . . . is not a residence (as defined in IC 3-5-2-42.5)"); I.C. § 7.1-5-12-5

---

[3] We suspect many Hoosiers would take exception to the State's suggestion that one has no principal residence if that residence is susceptible to being blown away by a gust of wind. *See Southern Indiana EF-4*, National Weather Service, https://www.weather.gov/lmk/03022012_EF4.htm (last visited Aug. 10, 2018) (describing damage from a tornado that blew across parts of southern Indiana: "several well-built brick homes were destroyed" despite having "anchor bolts attached to steel plates and a concrete foundation"; one home was "lifted" and "slid 65 yards off its foundation" while "[a]nother home was completely demolished and thrown downwind several hundred yards").

(listing exceptions to a prohibition on smoking in certain places, among them, "[t]he premises of a business that is located in the business owner's private residence (as defined in IC 3-5-2-42.5)"). Here, however, our legislature declined to provide a cross-reference to the definition in Title 3, suggesting that it did not intend for the definition to apply to the instant statute in Title 11.

[20] Nonetheless, we note that the State's proffered definition is essentially a codified definition of the common law concept of domicile. *Compare* I.C. § 3-5-2-42.5 *with State Election Bd. v. Bayh*, 521 N.E.2d 1313, 1317 (Ind. 1988) ("Domicile means the place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning." (quotation marks removed)). In some contexts, the Indiana Supreme Court has "interpreted residence to mean domicile." *Bayh*, 521 N.E.2d at 1317. Yet, an individual can have just one domicile. *See id.* ("Establishing a new residence or domicile terminates the former domicile."). The instant statute, however, contemplates a "principal residence," implicitly recognizing that—in this context—an individual may have more than one residence. I.C. § 11-8-8-3 ("As used in this chapter, 'principal residence' means the residence where a sex or violent offender spends the most time."). Thus, we are not persuaded to consult only the definition set forth in Title 3.

[21] We note also that our legislature has used the phrase "principal residence" when enabling a "consumer" to obtain a security freeze to prevent the release of credit information. *See* I.C. §§ 24-5-24.5-1, -12. In that context, "consumer"

means "an individual whose principal residence is in Indiana." I.C. § 24-5-24.5-1. The phrase "principal residence" is not otherwise defined—but, under the State's proffered reading, Laudig would be ineligible for this form of credit protection because his tent is not sufficiently fixed and permanent. Ultimately, the definition to which the State directs us within Title 3 of the election laws does not make sense when applied in Title 24, and we decline to now apply the definition in Title 11.

[22] We are left with an undefined term. "We give undefined terms their plain and ordinary meaning, and we may consult English language dictionaries when they are helpful in determining that meaning." *In re Estate of Kent*, 99 N.E.3d 634, 638 (Ind. 2018). Black's Law Dictionary gives several definitions for "residence," including the following germane definitions: "The act or fact of living in a given place for some time"; "The place where one actually lives, as distinguished from a domicile"; "A house or other fixed abode; a dwelling." *Residence*, Black's Law Dictionary (10th ed. 2014). Moreover, a different dictionary provides these pertinent definitions: "[T]he act or fact of abiding or dwelling in a place for some time . . . an act of making one's home in a place"; "[T]he place where one actually lives or has his home as distinguished from his technical domicile;" "[A] temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit"; "[T]he place where something is permanently established"; "[A] building used as a home." Webster's Third New Int'l Dictionary 1931 (2002).

[23] The State maintains that Laudig did not provide the address for a "principal residence" because his living situation was not fixed or permanent. The State also points out that Laudig did not have permission to be on the property. However, we conclude that the term "residence" is reasonably susceptible to more than one meaning; indeed, under several of the dictionary definitions, an individual could establish a residence somewhere irrespective of whether he had obtained permission to reside on the property, and even if his physical shelter "could have been blown away by a gust of wind." Appellee's Br. at 9. Further, when previously considering a registrant's obligation to timely update his address, we identified the purpose of that statute: "to inform police of the current location of offenders for surveillance and notification purposes." *Milliner v. State*, 890 N.E.2d 789, 792 (Ind. Ct. App. 2008), *trans. denied*. As the trial court noted, "if the purpose of giving an address is so they'll know where to find him – which I think is the purpose of the registry – he could have been found pretty easily." Tr. Vol. II at 60.

[24] We must interpret ambiguous statutes in the defendant's favor as far as the language can reasonably support. *Calvin*, 87 N.E.3d at 478-79. Our legislature ultimately created three categories of registrants: (1) those with a principal residence; (2) those residing in a specific kind of transitional housing; and (3) those in neither of the foregoing categories. *See* I.C. §§ 11-8-8-8(a)(1), -12(b), & -12(c). An individual who has registered with a "principal residence" is not required to register every seven days thereafter. *See* I.C. § 11-8-8-11, -14.

Although Laudig was "homeless" in one sense, the uncontroverted evidence indicates that he was not transient during the pertinent period of time and could be located in the Jungle. Absent a more specific definition from our legislature, the statutory framework permits a reasonable reading that Laudig identified his principal residence when he provided the address for the Jungle and described his tent therein. Thus, we must construe the statute in Laudig's favor, which leads us to conclude that Laudig registered his principal residence. At that point, then, Laudig was not required to register every seven days. Moreover, as law enforcement did not go look for Laudig, there is no indication that Laudig was not actually living at the identified location. Thus, there is no evidence that Laudig had a change of residence necessitating his obligation to report. We accordingly conclude that there is insufficient evidence that Laudig violated Indiana Code Section 11-8-8-17(a)(4) by failing to again register in January of 2017. We therefore reverse the conviction.

[26] Reversed.

Mathias, J., and Bradford, J., concur.