IN RE THE MARRIAGE OF NANCI ANN AND WILLIAM A. RINDERKNECHT

[No. 1-1276A236. Filed October 4, 1977.]

*J. V. Boles, Kendall, Stevenson & Lowry,* of Danville, *Alan H. Goldstein, Dutton, Kappes & Overman,* of Indianapolis, for appellant.

*John M. Howard, Jr., Howard & Lawson,* of Danville, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Petitioner-appellee William A. Rinderknecht (William) filed with the Hendricks Circuit Court a petition for the dissolution of his marriage to Nanci Ann Rinderknecht (Nanci). The trial court entered a decree wherein the marriage was dissolved, and the personal and property rights of the parties were adjudicated; Nanci has brought this appeal wherein she

questions the jurisdiction of the trial court to dissolve the marriage and to adjudicate the interests of the parties in that marriage.

## FACTS

William is a member of the U.S. Air Force and is stationed at Omaha, Nebraska. For eleven years prior to his enlistment into the Air Force in 1968, William lived with his parents in Danville, Hendricks County, Indiana. Nanci, who is now a resident of Omaha, Nebraska, married William in Mountain Home, Idaho in 1971. The parties have one child, who was born in 1974, and who has remained in Nanci's custody before, during, and after the dissolution of William's and Nanci's marriage.

William reenlisted in the Air Force in 1972, and he listed the home of his parents in Danville, Hendricks County, Indiana, as his permanent address. Subsequent to his reenlistment, William's parents moved to a new address in Danville.

William and Nanci resided together in Air Force housing on Offutt Air Force Base in Omaha, Nebraska from August 1975 until April 1976 when William moved out. Nanci continued to live in that same on-base housing after William moved out.

On May 3, 1976 Nanci filed a petition for separate board and maintenance in the District Court of Sarpy County, Nebraska. On May 7, 1976 William petitioned for the dissolution of his marriage to Nanci in the Hendricks Circuit Court. On May 10, 1976 William was served in Nebraska with Nanci's petition for separate board and maintenance, and on May 11, 1976 Nanci received by certified mail, return receipt requested, William's petition for dissolution of marriage.

In response to Nanci's petition for separate board and maintenance the Nebraska court gave Nanci possession of a 1975 Matador automobile which was in William's name alone, custody of the child, and ordered William to pay $65.00 every two weeks to Nanci for support.

In the case at bar the Hendricks Circuit Court awarded the 1975 Matador automobile to William and gave a 1968 automobile,

which was also in William's name, to Nanci. The parties were awarded whatever personal property they each possessed at the time of dissolution. William was ordered to pay $25.00 per week for child support, and to provide for the medical and insurance needs of the child.

At no time did the parties live in the state of Indiana after they were married.

## ISSUES

The issues presented for our review are as follows:

(1) What are the requirements necessary to establish residency within the meaning of IC 1971, 31-1-11.5-6 (Burns Supp. 1976), which is the Indiana residence provision of the Dissolution of Marriage Act, and did the husband sufficiently establish his residence as therein required?

(2) Did the Hendricks Circuit Court have the requisite jurisdiction to render a valid judgment and decree dissolving the marriage of the parties, affecting the incidents of custody, child support, visitation, and division of the marital property, which issues are incidental to a dissolution decree?

## DISCUSSION AND DECISION

Issue One

IC 1971, 31-1-11.5-6 provides in part:

"(a) At the time of the filing of a petition pursuant to section 3(a) [subsection (a) of 31-1-11.5-3], at least one [1] of the parties shall have been a resident of the state or stationed at a United States military installation within the state for six [6] months immediately preceding the filing of each petition.

(b) At the time of the filing of a petition pursuant to section 3(a) [subsection (a) of 31-1-11.5-3], at least one [1] of the parties shall have been a resident of the county, or stationed at a United States military installation within the county, where the petition is filed for three [3] months immediately preceding the filing of the petition."

Nanci contends that neither she nor William were residents of Indiana at the time William's petition for dissolution of

marriage was filed. Therefore, she contends, the residence and venue requirements of IC 31-1-11.5-6, *supra,* were not met, and the Hendricks Circuit Court did not have jurisdiction over the parties or their marriage.

Nanci is correct in her assertion that she and the child were not residents of Indiana after the parties separated, but she is incorrect in her assertion that William also was not a resident of Indiana. In *Board of Medical Registration and Examination v. Turner* (1960), 241 Ind. 73, 79-80, 168 N.E.2d 193 our Supreme Court defined residence as follows:

> "It is the general rule in construing a statute which prescribes residence as a qualification for the enjoyment of a privilege, or the exercise of a franchise, that domicile and residence are deemed to be equivalent or synonymous, i.e., that the word residence is deemed to mean domicile. . . .
>
> The term domicile in a strict legal sense has been defined as the place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning. Balletine Law Dictionary, p. 400. To acquire a domicile of choice, there must be an actual residence in a particular place together with an intention to remain there. A place cannot serve as a domicile merely by force of bodily presence there when it is unaccompanied by an intention to live there permanently, or at least indefinitely. 11 I.L.E., 'Domicile,' §2, p. 3. As distinguished from domicile, residence may be any place of abode or dwelling regardless of how temporary. . ."

In the case at bar the trial court found that William was a resident of Indiana for the following reasons: He enlisted when he was a resident of Hendricks County, and he reenlisted when he was on duty in the Air Force, giving Hendricks County, Indiana as his home address; prior to entering the service he registered to vote and is still registered in Hendricks County; while in the service, he maintained his membership in the Catholic church in Hendricks County; and most importantly he expressed an intention to return to Hendricks County, Indiana to live, when his tour of active duty in the service was completed. Such evidence is sufficient to support a finding that

William was a resident of Hendricks County when the petition for divorce was filed.[1]

William asserts that Nanci and the child were residents of Indiana, because, as he contends, the residence of the wife and child would follow that of the husband and father respectively. William is correct in asserting that the general rule in Indiana is that the residence of a family follows that of the father.[2] However, the general rule is not without exception. Where by agreement or for justifiable reasons the parents of a child are living apart and have separate domiciles, the residence or domicile of the child would follow the residence of the parent with whom the child is living.[3] It is also the modern trend to allow the wife a choice in determining her domicile instead of making such determination solely by operation of law.[4] Therefore, we determine the Indiana rule to be that the domicile of the wife follows that of the husband, unless she, with the requisite physical presence and intent, chooses another domicile.

1. See 24 Am.Jur.2d, Divorce and Separation §262, 21 A.L.R.2d 1163, IND.CONST., art. 2, §4.

2. See *Curtis v. Curtis* (1892), 131 Ind. 489, 30 N.E. 18, *Johnson v. Smith* (1932), 94 Ind.App. 619, 180 N.E. 188.

3. In 13 A.L.R.2d 306 at 308-309 it states the following:

"The view that where a married women acquires a domicile separate from her husband her domicile controls that of minor children of the parties who live with her, or may do so under particular circumstances, is supported by the following cases:

Connecticut.—Boardman v. Boardman (1948) 135 Conn 124, 62 A2d 521, 13 ALR2d 295 (for purpose of jurisdiction to award custody).

* * *

Missouri.—See Beckmann v. Beckmann (1949) 358 Mo 1029, 218 SW2d 566, 9 ALR2d 428, in which the court said (obiter): 'Ordinarily the domicile or legal residence of a minor child is the same as that of the father. But where the father and mother separate and establish different domiciles the child usually takes the domicile of the parent with whom it lives in fact. Restatement Conflict of Laws, § 30, § 32 . . . .' "

4. In H. Clark, Law of Domestic Relations (1968), pp. 150-151 it says:

"In the United States more complex rules of domicile respecting the married women have developed. When she marries, the wife normally takes the husband's domicile automatically in place of her previous domicile of choice. So long as they live together she continues to have his domicile. Of course if the matter were left to her choice, she would usually choose his domicile, so that in most

In the case at bar the child was living with Nanci after Nanci and William had separated. Therefore, the child's domicile was immediately after the separation and is now the same as Nanci's. Nanci became and is now a resident or domiciliary of Nebraska because she is physically present in Nebraska and has presently shown the intent to make Nebraska her home.

Therefore, only William qualified as a resident of Indiana for the purpose of giving Indiana courts jurisdiction to dissolve the marriage under IC 31-1-11.5-6, *supra.*

Issue Two

A dissolution of marriage proceeding has historically contained two principal elements: (1) the divorce, that is, the changing of the parties' status from married to unmarried, and (2) the adjudication of the incidences of marriage, that is, affecting a nonresident respondant's interest in property, providing for child support, visitation, etc. The divorce has always been denominated as an *in rem* proceeding in which a court has jurisdiction to change the marital status of the parties even when only one party to a marriage is a bona fide resident of the state in which that court is located. However, in adjudicating the incidences of a marriage, courts have been required to obtain *in personam* jurisdiction over both parties.[5]

The recent U.S. Supreme Court case of *Shaffer v. Heitner* (1977), ____ U.S. ___, 97 S.Ct. 2596, addresses itself to the

cases her domicile by operation of law and her domicile of choice would be the same. But our law does continue to insist that she has an obligation to remain at her husband's domicile, an obligation which becomes of importance in actions by her for non-support, or by either spouse for divorce on the ground of desertion. . . .

\* \* \*

. . . Such a rule creates unnecessary doubt about the crucial jurisdictional fact of domicile and is inconsistent with the Married Women's Property Acts, whose basic premise is that the married woman has full legal capacity. *Therefore the correct principle is that the wife is able to acquire a separate domicile of choice whenever she lives apart from her husband, regardless of the circumstances.* The only issue should be whether the usual requirements for the establishment of a domicile of choice have been met, that is, whether she has been physically present in the claimed domicile with the intention of making it her home. . . ." (Our emphasis) (Footnotes omitted)

5.  See *Estin v. Estin* (1948), 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561.

interrelationship between *in rem* and *in personam* jurisdiction. As a result of the *Shaffer, supra,* decision the jurisdictional requirements for obtaining a dissolution of marriage have become unclear.

In *Shaffer* a shareholder's derivative suit was brought against a Delaware corporation and seven officers of that corporation, all of whom are nonresidents of Delaware, the Delaware court granted a motion for sequestration of certain Delaware property, which belonged to the nonresident defendant officers. The defendants in *Shaffer, supra,* entered an appearance contending that the ex parte sequestration orders did not afford them due process and that the Delaware court did not have jurisdiction to adjudicate the personal rights of nonresident defendants in the Delaware property of those defendants. The U.S. Supreme Court held that the mere presence of a nonresident defendant's property within a state does not automatically permit a state court to exercise jurisdiction over that nonresident's interest in that property. There must exist certain minimum contacts between the forum state, the property, and the litigation before the due process requirements of fair and substantial justice are met.

The following are extracts from the *Shaffer* opinion, as reported in 97 S.Ct:

" '. . . *due process requires only that in order to subject a defendant to a judgment in personam, if he is not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."* Miliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278' [*International Shoe Company v. Washington*] 326 U.S., at 316, 66 S.Ct. at 158. [p. 2580].

\* \* \*

"The case for applying to jurisdiction *in rem* the same test of 'fair play and substantial justice' as governs assertions of jurisdiction *in personam* is simple and straightforward. It is premised on recognition that '[t]he phrase, "judicial jurisdiction over a thing", is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing.' Restatement (Second) of Conflict of Laws §56, introductory note. This

recognition leads to the conclusion that in order to justify an exercise of jurisdiction *in rem*, the basis for jurisdiction must be sufficient to justify exercising 'jurisdiction over the interests of persons in a thing.' *The standard for determing whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum contacts standard elucidated in International Shoe.*

"This argument, of course, does not ignore the fact that the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. . . .

\* \* \*

"*It appears, therefore, that jurisdiction over many types of actions which now are or might be brought in rem would not be affected by a holding that any assertion of state court jurisdiction must satisfy the International Shoe standard.* For the type of *quasi in rem* action typified by *Harris v. Balk* and the present case, however, accepting the proposed analysis would result in significant change. There are cases where the property which now serves as the basis for state court jurisdiction is completely unrelated to the plaintiff's cause of action. [pp. 2581-2]

\* \* \*

"The fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property supports an ancient form without substantial modern justification. Its continued acceptance would serve only to allow state court jurisdiction that is fundamentally unfair to the defendant.

"*We therefore conclude that all assertions of state court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny.*" [pp. 2584-5]

(Our inserts) (Our emphasis) (Footnotes omitted)

Now that state courts are required to use the minimum contact test in all exercises of state court jurisdiction, the question arises

as to how the use of the minimum contact test for both *in rem* and *in personam* proceedings will affect the bipartite dissolution of marriage proceeding. The requirement that a court must obtain *in personam* jurisdiction prior to adjudicating the rights and obligations which are incidences of a marriage will remain unchanged.

It has always been held that the residency alone of the petitioner in a dissolution of marriage proceeding does not provide a sufficient contact to give a court *in personam* jurisdiction over a nonresidence respondent. However, the residency of the petitioner in a dissolution proceeding, without anything more, has been consistently upheld as a sufficient contact to enable a court, through an *in rem* proceeding, to change marital status of the parties from married to unmarried.[6] Does the dual nature of a dissolution proceeding become unified because the minimum contact test is applied to both *in rem* and *in personam* proceedings? We hold that it does not.

In applying the minimum contact test to a dissolution of marriage proceeding a court must ask two questions: (1) What are the minimum contacts between the forum state and the interests of the parties in their marriage which must necessarily be found before a court of the forum state can change the marital status of the parties? (2) What are the minimum contacts between the forum state and the parties, which must be found before a court of the forum state can adjudicate the rights and obligations which are incidences of the marriage of the parties?

Since two different types of actions are involved in a dissolution proceeding, two levels of minimum contact may be found sufficient to meet the requirements of "fair play and substantial justice" which are inherent in the minimum contact test. Therefore, as to the changing of the status of the parties, the minimum contact test with its inherent notions of fair play and substantial justice, may be met by requiring only the residency of one of the parties, and we hold that it is so met. At the same time, the contacts necessary to satisfy the minimum contact test prior

---

6.  See *Estin, supra.*

to obtaining *in personam* jurisdiction for the purpose of adjudicating the incidences of marriage may, as it traditionally has, require something more, and we hold that it does.

In *Williams v. North Carolina* (1942), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273, 1280 the U.S. Supreme Court said:

". . . Hence the decrees in this case like other divorce decrees are more than in personam judgments. They involve the marital status of the parties. Domicil creates a relationship to the state which is adequate for numerous exercises of state power. . . . Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of commanding problems in the field of domestic relations with which the state must deal. *This it is plain that each state by virtue of its command over its domiciliaries and its large interest in the institutions of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent.* There is no constitutional barrier if the form and nature of the substituted service . . . meet the requirements of due process. . . ." (Citations omitted) (Our emphasis)

In light of the great interest which each state has in the marital status of its own residents and domicilaries we hold that, although the test for obtaining jurisdiction to change the status of married persons is now the minimum contact test, the residency of one of the parties to the marriage is sufficient to meet that test. The changing of marital status in a dissolution proceeding is one of those *in rem* actions which, according to *Shaffer* at page 2582, "would not be affected by a holding that any assertion of state court jurisdiction must satisfy the *International Shoe* standard."

In the case at bar the Hendricks Circuit Court had subject matter jurisdiction over the marriage of Nanci and William because William was a resident of Hendricks County, Indiana. Therefore, that portion of the trial court's decree, which divorces the parties and thereby changes their martial status from married to unmarried is valid and should be upheld.

However, the question arises as to whether the Hendricks Circuit Court ever obtained *in personam* jurisdiction over Nanci. It is correct that Nanci received actual notice of the Indiana dissolution proceeding by certified mail, return receipt requested. However, before the required due process can be satisfied, a party must not only be given actual or constructive notice, but, as pointed out above, there must exist certain "minimum contacts" between a state and a party over whom a court of that state seeks to exercise control.[7]

The minimal contact requirement for obtaining *in personam* jurisdiction in a dissolution proceeding is always satisfied, if the defendant is a resident of Indiana. If he is a nonresident, then the minimal contact requirement can be met in two ways: (1) if the requirements of Ind. Rules of Procedure, Trial Rule 4.4(A)(7) or some other constitutionally acceptable minimum contact are met,[8] or (2) if the nonresident appears and fails or refuses to assert the trial court's lack of *in personam* jurisdiction in a timely manner.[9]

In the case at bar it is clear that Nanci is a resident of the state of Nebraska. Therefore, unless she came within the minimal contact language of TR. 4.4(A)(7), or unless she appeared and waived any issue as to personal jurisdiction, then the Indiana court does

---

7. See *Hanson v. Denckla* (1959), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, and *International Shoe Company v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

8. TR. 4.4(A)(7) provides:

"(A) Acts serving as a basis for jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

* * *

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state."

9. See Ind. Rules of Procedure, Trial Rule 12(H)(1) and *Phillips v. Great Lakes Health Congress* (1976), 170 Ind. App. 674, 354 N.E.2d 307.

not have *in personam* jurisdiction over her and cannot therefore, adjudicate the incidences of the parties' marriage.[10]

TR. 4.4(A)(7) is not broad enough in its scope to encompass the situation which is present in the case at bar. There is no evidence which would support a finding that Nanci and William ever lived "in the marital relationship within the state."

Since there are not sufficient minimal contacts to permit the application of TR. 4.4(A)(7) in the case at bar, then if the Indiana court is to have *in personam* jurisdiction over Nanci, it must be found that Nanci appeared and failed to assert in a timely manner the trial court's lack of *in personam* jurisdiction. We find no such waiver in the case at bar. The record discloses that Nanci, by counsel, made an appearance and filed a *timely* motion to dismiss pursuant to Ind. Rules of Procedure, Trial Rule 12(B) for the purpose of questioning the trial court's *in personam* jurisdiction.

From the foregoing it can be seen that the Hendricks Circuit Court did not obtain *in personam* jurisdiction over Nanci.[11]

---

10.   See *Estin, supra,* and *International Shoe, supra.*

11.   In their briefs the parties in the case at bar treated the wife's (Nanci's) appearance in this cause as a "special appearance" for the limited purpose of challenging jurisdiction. Such "special appearances" are no longer necessary.

In 2A J. Moore, Moore's Federal Practice §12.12 (2nd ed., revised 1975) the following explanation of Fed. Rule of Civil Procedure, Rule 12(b), which is identical to Ind. TR. 12(B) in most respects, is made as follows:

"If a defendant proceeds *first* on the merits, as by a motion to dismiss for failure to state a claim or by an answer on the merits, and *thereafter* attempts to challenge jurisdiction over his person or improper venue, the challenge should fail; it comes too late, and has not been made in the manner prescribed in Rule 12. But, as stated above, a party may present *every* defense (2)-(5) included, if he proceeds in the manner prescribed in Rule 12, without waiving any defense merely because he has joined such defenses as (2)-(5) with defenses on the merits, or with a motion for a more definite statement or for some other relief. Where the defenses of lack of personal jurisdiction and improper venue are joined with motions to dismiss for failure to state a claim, the court should dispose of jurisdiction and venue issues first.

Special appearances are no longer necessary in any case. 'Rule 12 has abolished for federal courts the age-old distinction between general and special appearances.' A voluntary appearance does not waive the objection of lack of jurisdiction over the person." (Original emphasis)

Therefore a defendant may challenge the court's *in personam* jurisdiction by making a timely TR. 12(B)(2) motion or by challenging such jurisdiction in his

Therefore, that portion of the decree which pertains to the incidences of marriage was improperly entered and must be vacated. However, since the 1968 automobile and certain other personal property were the sole property of William, the Hendricks Circuit Court had jurisdiction to make an award concerning them. Inasmuch as Nanci had a direct interest in the 1975 automobile, as a result of the Nebraska separation decree, the Indiana court could not enter a decree concerning it, without first obtaining *in personam* jurisdiction over Nanci.

Judgment affirmed as to that portion which dissolves the marriage of the parties, reversed as to that portion which adjudicates the incidences of marriage and cause remanded with instructions to the trial court to delete from the judgment, heretofore entered herein, that part which adjudicates the incidences of marriage and to enter judgment as to the ownership and possession of all personal property other than that property in which Nanci has an interest.

Upon compliance with this order the judgment is in all things affirmed.

NOTE — Reported at 367 N.E.2d 1128.

Robertson, C.J. and Lybrook, J. concur.

---

answer. The court should first hear and determine the issues of personal jurisdiction. If the court should determine that it does in fact have personal jurisdiction over the defendant, the case should proceed for a trial on the merits. If the defendant has made a timely challenge of the court's *in personam* jurisdiction in his answer or by filing a TR. 12(B)(2) motion, he does not, by addressing the merits of the case, waive any issue as to personal jurisdiction, and such issue may properly be raised on appeal, together with any other issues which have been properly preserved.