James PERSON, Appellant
(Respondent Below),

v.

Dyanna PERSON, Appellee
(Petitioner Below).

No. 50A03–9003–CV–101.

Court of Appeals of Indiana,
Third District.

Dec. 4, 1990.

Robert I. Auler, Urbana, Aladean M. Derose, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

James Person appeals the denial of his petition to set aside a judgment of dissolution, presenting us with four issues:

I. Whether James timely filed his petition to set aside the judgment of dissolution.

II. Whether the trial court had subject matter jurisdiction over the dissolution action.

III. Whether James waived lack of personal jurisdiction.

IV. Whether the trial court had personal jurisdiction over James so as to allow adjudication of custody and child support.

We reverse.

The facts of this case are essentially undisputed. James and Dyanna Person were married in Indiana on July 8, 1983. They immediately moved to Rantoul, Illi-

nois, where they both resided until December of 1984. In December of 1984, they returned to Indiana to visit family over the holidays. Apparently at some point during the visit, already strained relations were stretched to the breaking point. James returned to Illinois before Christmas, while Dyanna remained at the home of her mother until December 29, 1984, when she went to Plymouth, Indiana to stay with her sister.

Dyanna and the children remained in Plymouth, Indiana until the end of April or the beginning of May, when they returned to Illinois to attempt a reconciliation. If the reconciliation was successful, Dyanna planned to stay in Illinois. She applied for several jobs in the Rantoul area and applied for State of Illinois unemployment benefits, listing the Rantoul apartment as her home address. She maintained her mailing address at Rantoul, Illinois, and she retained her Illinois drivers license.

Although the initial outlook was promising, familiar tensions soon returned and the possibility of a permanent reconciliation seemed remote. On June 16, 1985, Dyanna removed her belongings from the Rantoul apartment and moved back to her sister's home in Plymouth. The next day, she filed her petition in the Marshall Superior Court requesting dissolution of the marriage.

On December 4, 1986, the trial court entered a judgment of dissolution, awarding custody of the two children to Dyanna, and ordering James to pay $100 per week for child support. Although he was served with process in Illinois, James never appeared in the action prior to judgment. On October 24, 1988, James filed his petition to set aside the judgment of dissolution pursuant to Indiana Rules of Procedure, Trial Rule 60(B), which was denied by the trial court. He appeals the denial of that petition.

## I.

### Timeliness of James' Petition

■ Dyanna argues that since James waited to file his petition to set aside the judgment until twenty-two months after judgment, his petition was not filed "within a reasonable time" as required by Trial Rule 60(B).[1] She cites *Toller v. Toller* (1978), 176 Ind.App. 322, 375 N.E.2d 263 and *Fairrow v. Fairrow* (1989), Ind.App., 543 N.E.2d 649. Since Dyanna filed her brief, *Fairrow* was vacated by *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597 (*Fairrow II*).

In *Toller*, the Court of Appeals affirmed the dismissal of the husband's motion to set aside a support decree, stating that the husband had failed to file his motion in a timely manner. The Court stated:

In this case, a period of over two years elapsed between the entry of judgment and the filing of Walter Sr.'s TR. 60(B) motion. The meager evidence in this case also shows that Walter Sr. had been remarried for at least a year before the hearing on his motion, which supports the inference that he was aware of the judgment in Starling's dissolution suit. We hold, therefore, that Walter Sr. has failed to show any abuse of discretion by the trial court, that he did not file his TR. 60(B) motion within a reasonable time, and further, with the exception of his jurisdictional issues, that he has waived his errors by failing to file a timely motion to correct errors under TR. 59.

---

1. Trial Rule 60(B) provides in relevant part: On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:
   * * * * * *
   (6) the judgment is void;

\* \* \* \* \* \*

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4). The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8)....

*Toller, supra,* 375 N.E.2d at 265. However, the court noted in a footnote that "as a general rule, an allegation of complete lack of subject matter jurisdiction, apparent from the face of the record, may be raised at any time." *Id.*

In *Fairrow II,* in the course of an ordinary medical examination, it was discovered that the husband did not possess the sickle-cell anemia trait, and therefore could not possibly be the father of his former wife's child. Although the divorce had occurred eleven years earlier, the Supreme Court held that the Trial Rule 60(B)(8) motion was filed within a reasonable time in light of the fact that the evidence was both newly discovered and conclusive. The Court emphasized, however, that it "strongly discourage[d] relitigation of support issues through T.R. 60(B)(8) motions in the absence of highly unusual evidence akin to the evidence presented in this case." *Fairrow, supra,* 559 N.E.2d at 600.

■ Here, the petition to set aside the judgment did not attempt to relitigate support issues, but sought instead to raise the lack of the court's jurisdiction to enter the default judgment against James. Judgments rendered without personal or subject matter jurisdiction are void and may be directly or collaterally attacked at any time. *Calumet Teaming & Trucking Co. v. Young* 218 Ind. 468, 33 N.E.2d 109, 110, *rehearing denied* 218 Ind. 468, 33 N.E.2d 583. Federal Rule of Civil Procedure 60(b) is nearly identical to ours,[2] and Indiana courts have looked to federal cases decided under the rule for guidance in the construction of our own rule. *Soft Water Utilities, Inc. v. LeFevre* (1973), 261 Ind. 260, 301 N.E.2d 745, 747. The federal courts have generally held that since void judgments are "a legal nullity" and may be challenged at any time, the "reasonable time" limitation in F.R.C.P. 60(b) means no time limit for challenges under F.R.C.P. 60(b)(4), in absence of exceptional circumstances. *Pacurar v. Hernly* (7th Cir.1979), 611 F.2d 179, 181; 7 *Moore's Federal Practice* ¶ 60.25[4], at 60–241–242 (2d ed. 1990). We hold that in the absence of extraordinary circumstances not present here, James could properly have raised the absence of jurisdiction at any time by either a T.R. 60(B)(6) motion or a collateral attack.

## II.

### *Subject Matter Jurisdiction*

■ James contends that the Marshall Superior Court had no subject matter jurisdiction over the dissolution proceeding, because Dyanna did not meet the jurisdictional prerequisites set out in Indiana Code 31–1–11.5–6 (Supp.1990). That statute provides in part:

Sec. 6. Residence and Venue.

(a) At the time of the filing of a petition pursuant to section 3(a) or 3(c) of this chapter, at least one (1) of the parties shall have been a resident of the state or stationed at a United States military installation within the state for six (6) months immediately preceding the filing of each petition.

(b) At the time of the filing of a petition pursuant to section 3(a) or 3(c) of this chapter, at least one (1) of the parties shall have been a resident of the county, or stationed at a U.S. military installation within the county, where the petition is filed for three (3) months immediately preceding the filing of the petition.

**2.** F.R.C.P. 60(B) provides in pertinent part:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
＊　＊　＊　＊　＊　＊

(4) the judgment is void;
＊　＊　＊　＊　＊　＊
(6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time ...

For purposes of this statute, the term "residence" is synonymous with the term "domicile". *Orejuela v. Orejuela* (1986) Ind.App., 494 N.E.2d 329, 331. Domicile has been defined as the "place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning." *In re Marriage of Rinderknecht* (1977), 174 Ind.App. 382, 386, 367 N.E.2d 1128, 1131. The domicile of the wife follows that of the husband, unless her intent and physical presence indicate that she has chosen another. *Id.* 367 N.E.2d at 1132.

The burden of proving domicile rests upon the party asserting it. *State ex rel. Flaugher v. Rogers* (1948), 226 Ind. 32, 77 N.E.2d 594, 596. Once acquired, domicile is presumed to continue. *State Election Board v. Bayh* (1988), Ind., 521 N.E.2d 1313, 1317. A person who temporarily leaves his place of residence with the intention of returning has not lost his original residence. *Id.* A self-serving statement of intent is not sufficient to establish that a new domicile has been acquired. *Id.* at 1318. A definite intention is required, which should be shown by evidence of acts undertaken in furtherance of the definite intention which make it manifest and believable. *Id.*

Assuming *arguendo* that Dyanna became a domiciliary of Indiana when she continued to stay in Indiana at her relatives' houses after the holidays, we are still unable to find that she was an Indiana domiciliary for the requisite statutory period of time prior to instituting this divorce action. The undisputed evidence reveals that in April of 1985, Dyanna and the children returned to Rantoul, Illinois to attempt a reconciliation. During that period, Dyanna applied for jobs in Rantoul and for Illinois unemployment compensation. On those applications, she listed the Rantoul address as her residence. Dyanna testified that she would move back to Indiana *if it didn't work out.* For a week, she thought the marriage would work out. After that week, communication broke down. On June 16, she left with the children and her belongings and filed this action in Marshall County, Indiana the next day.

These facts lead only to one conclusion. At least for a week, Dyanna intended to make Illinois her home again. Even though she only possessed this intent for a short time, at the moment of change of intent her former domicile in Indiana was terminated and a new domicile in Illinois was established. *Bayh, supra,* at 1317. Thus, the trial court's finding that Dyanna was an Indiana domiciliary was contrary to law. She therefore was unable to meet the jurisdictional prerequisite of both state and county residence set out in Indiana Code 31–1–11.5–6. The trial court had no subject matter jurisdiction to adjudicate the dissolution, and the judgment entered by the trial court to that effect is void.

Because our disposition of this issue requires reversal, we will not address Issues III and IV.

Reversed.

SHIELDS, P.J., concurs.

HOFFMAN, P.J., dissents with separate opinion.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent.

A clear inference can be drawn that Dyanna Person only resided in Illinois temporarily to see if her marriage difficulties could be resolved. However, when she realized that the problems could not be worked out, she returned to Indiana.

The court in *State Election Bd. v. Bayh* (1988), Ind., 521 N.E.2d 1313, stated the law in this area:

"A change of domicile requires an actual moving *with an intent to go to a given place and remain there.* 'It must be an intention coupled with acts evidencing that intention to make the new domicile a home in fact.... [T]here must be the intention to abandon the old domicile; the intention to acquire a new one; and residence in the new place in order to accomplish a change of domicile.' [*State ex rel. Flaugher v. Rogers* (1948), 226 Ind. 32, 35–36, 77 N.E.2d 594, 595–596.]"

*Id.* at 1317. (Emphasis added.).

Following the logic of *Bayh*, it is obvious from Dyanna's testimony that she only intended to stay in Illinois if her marriage could be worked out. She did not have the intention to move to Illinois and remain there permanently, but only to remain there on a trial basis.

This case can be compared to *Moody v. Moody* (1986), Ind.App., 488 N.E.2d 378. Lonnie Moody moved to Indiana in December of 1983, nine months before he initiated divorce proceedings. However, during this nine-month period he moved to Tennessee for approximately three months. Lonnie testified that he went to Tennessee to look for work and that he returned when he could not find suitable employment. His residency in Indiana was simply interrupted temporarily when he went to Tennessee for the sole purpose of finding employment. Similarly, Dyanna's residence in Indiana was interrupted temporarily when she went to Illinois to try to work out her marital problems. When she realized that the problems could not be resolved, she returned to her residence in Indiana.

This Court's standard of review is well settled. We will neither reweigh the evidence nor reassess the credibility of the witnesses. *Bayh, supra,* at 1315. The trial court was justified in finding that subject-matter jurisdiction existed. Clear inferences can be drawn from Dyanna's testimony that she only left Indiana temporarily to see if her marital problems could be resolved. Therefore, in accordance with our standard of review, I would affirm the trial court's decision.