Scott A. SKILES, Appellant–Respondent,

v.

Elizabeth A. SKILES, Appellee–Petitioner.

No. 07A01–9411–CV–363.

Court of Appeals of Indiana, First District.

Feb. 3, 1995.

Transfer Denied July 11, 1995.

**354**

Andrew C. Mallor, Kendra Gowdy Gjerdingen, Mallor Clendening Grodner & Bohrer, Bloomington, for appellant.

Preston T. Breunig, Martha L. Westbrook, Buck Berry Landau & Breunig, Indianapolis, for appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Scott A. Skiles brings this interlocutory appeal by right under Ind. Appellate Rule 4(B)(1) challenging the trial court's award of $144,000 to appellee-petitioner Elizabeth A. Skiles (Libby) as preliminary attorney fees. He maintains that the trial court lacked subject matter jurisdiction to enter the award because Scott and Libby were not domiciled in Indiana, but Florida where Scott had been employed as a professional basketball player and the parties resided.

### FACTS

In 1988, Scott and Libby were married in Carmel, Indiana, and purchased a condominium in Indianapolis where they lived year round. At that time Scott played professional basketball for the Indiana Pacers. The Skiles' first son, Scotty, was born in Indianapolis later in 1988. In 1989, the Skiles sold their Indianapolis condominium and purchased a home on Sweetwater Lake in Nineveh, Brown County, Indiana.

Scott was drafted by the Orlando Magic in the NBA expansion draft and went to Orlando for the 1989–90 basketball season. The Skiles rented a furnished condominium during that season. Afterward, they returned to their Brown County home. For the 1990–91 season, the Skiles again rented a furnished place to live in Florida and returned to their Brown County home when the basketball season was over.

In the summer of 1991, Scott received a multi-year, multi-million dollar contract with a one million dollar signing bonus from the Orlando Magic. On the advice of a financial advisor, a large portion of the signing bonus was applied to the purchase of a house in Longwood, Florida, where the Skiles family lived during the basketball seasons. A second son, Sean, was born in Florida in 1992. At the end of the 1991–92 season, the Skiles vacationed at their Brown County home.

After their purchase of the Florida home, the Skiles filed for and obtained a homestead exemption, designating that home as their primary residence, something they had never done on any property they owned in Indiana. After mid–1989, they designated themselves as Florida residents on their federal income tax returns. They held themselves out as Florida residents on the nonresident income tax forms Scott, as an NBA player, was required to file in California for games played there. Because Florida has no income tax, Scott and Libby took advantage of the reduced tax burdens they received as Florida residents. Both Scott and Libby obtained Florida driver's licenses in 1991. Libby registered all of the parties' vehicles in Florida and obtained Florida license plates. Scott registered and voted in the 1992 Florida elections. Libby did not vote.

From September 1989 until their departure from Florida, Libby and the children were regularly treated by Florida physicians, and even while vacationing back home again in Indiana, Libby continued treatment in Florida with her therapist.

During the 1993–94 basketball season, marital discord escalated and Libby and the

children left Florida on September 12, 1993. They moved to her grandparents and then to the Skiles' Brown County retreat. Five days later, Libby filed her petition for dissolution in the Brown Circuit Court, alleging that she was an Indiana resident. Scott filed a motion to dismiss for lack of jurisdiction contending that Indiana lacked subject matter jurisdiction because both Libby and he were Florida residents.[1] Upon holding an evidentiary hearing, the trial court ruled that the Skiles were domiciled in Indiana and that it had jurisdiction to entertain their dissolution proceedings. Thereafter, the trial court awarded Libby $144,000 as preliminary attorney fees, in addition to the $110,000 Libby had previously paid her attorneys. Pursuant to App.R. 4(B)(1), which provides for interlocutory appeals in cases for the payment of money, Scott filed this interlocutory appeal contesting the award.

### DISCUSSION AND DECISION

#### I. Standard of Review

■ On appeal of a bench decision, we will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). The trial court's judgment is clearly erroneous if a review of the record leaves us with a firm conviction that a mistake has been made. *Merrill v. Merrill* (1992), Ind.App., 587 N.E.2d 188, 189. When the trial court does not enter findings, we presume the judgment is based on findings supported by the evidence and will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Klebes v. Forest Lake Corp.* (1993), Ind.App., 607 N.E.2d 978, 982, *trans. denied.* However, when reviewing a general judgment, we consider not only the evidence most favorable to the judgment, but also any uncontradicted evidence. *Manor v. Statesman Ins. Co.* (1993), Ind. App., 612 N.E.2d 1109, 1113, *trans. denied.*

#### II. Jurisdiction

Scott challenges the award of attorney fees by asserting that the trial court lacked sub-ject matter jurisdiction. The trial court awarded the attorney fees under the authority of IND.CODE § 31–1–11.5–16. However, to make such an award, jurisdiction under IND.CODE § 31–1–11.5–6 must first be satisfied. Scott asserts that it was not.

■ In Indiana, a divorce court does not obtain subject matter jurisdiction unless at least one party has been an Indiana resident for the six months immediately preceding the filing of the dissolution petition and a resident of the county where the petition was filed for the three months immediately preceding the filing of the petition. IND.CODE § 31–1–11.5–6; *Person v. Person* (1990), Ind. App., 563 N.E.2d 161, 163, *trans. denied.* For purposes of I.C. § 31–1–11.5–6, "residence" is synonymous with "domicile," which has been defined as the "place where a person has his true, fixed, permanent home and principal establishment, and to which place he has, whenever he is absent, the intention of returning." *Id.* at 164 (quoting *In re Marriage of Rinderknecht* (1977), 174 Ind. App. 382, 386, 367 N.E.2d 1128, 1131). The domicile of a wife follows that of her husband unless her intent and physical presence indicate that she has chosen another. *Id.* The issue of domicile is a contextual determination to be made by the trial court upon a consideration of the individual facts on a case-by-case basis. *State Election Board v. Bayh* (1988), Ind., 521 N.E.2d 1313, 1318.

■ Once acquired, domicile is presumed to continue. *Id.* at 1317. A person who temporarily leaves his place of residence with the intention of returning has not lost his original residence. *Id.* A self-serving statement of intent is not sufficient to establish that a new domicile has been acquired. *Id.* at 1318.

■ When Libby filed the dissolution petition, she bore the burden of proving domicile in Indiana for the preceding six months. *See Person,* 563 N.E.2d at 164. Scott argues that the parties established domicile in Flori-

---

1. Simultaneously, Scott initiated custody proceedings in Florida. The Fifth District Court of Appeals of Florida deferred jurisdiction to Indiana in accordance with the Uniform Child Custody Jurisdiction Act since custody proceedings were first filed in Indiana.

da when they purchased their Orlando house. The uncontroverted evidence as outlined in the FACTS section supports his argument. Libby has repeatedly declared herself to be a Florida resident. She has taken advantage of the tax consequences of such a declaration. She has declared herself eligible for the household exemption and registered the family's vehicles in that state. Our courts should not permit litigants to affirm their home to be in Florida, but thereafter permit a recantation to bypass the waiting period under the dissolution statute to acquire jurisdiction more quickly.[2]

Based on the evidence favorable to the judgment and the uncontradicted evidence, we have a firm conviction that a mistake has been made. The court's determination of domicile is clearly erroneous. Indiana lacks subject matter jurisdiction. Therefore, the court lacked authority to consider the dissolution petition and the request for attorney fees.[3] Accordingly, Libby's petition is dismissed and the attorney fees award vacated.

Judgment reversed.

ROBERTSON, J., dissents with separate opinion:

GARRARD, J., concurs.

ROBERTSON, Judge, dissenting.

I respectfully dissent. On appeal of claims tried before the bench, we shall not set aside the judgment unless it is clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Ind.Trial Rule 52(A). When the trial court makes no findings, we presume the judgment is based on findings supported by the evidence and will affirm if the trial court's judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, to-

gether with all reasonable inferences to be drawn therefrom. *Klebes v. Forest Lake Corporation* (1993), Ind.App., 607 N.E.2d 978, *trans. denied.* Moreover, when reviewing a general judgment, we presume that the trial court correctly followed the law: this presumption is one of the strongest presumptions applicable to our consideration of a case on appeal. *Baker v. Baker* (1986) Ind.App., 488 N.E.2d 361.

The evidence of record reveals that the Skiles' 1991 purchase of the house in Florida was made primarily as an investment on the advice of their financial advisor. Most of the other conduct the majority has relied upon to support its conclusion that the Skiles changed their domicile from Indiana to Florida was made in order to take advantage of the fact that Florida has no income tax, also on the advice of the financial advisor. The version of the facts relied on by the majority does not lead inescapably to the conclusion that the Skiles had acquired a new domicile in Florida as a matter of law.

The facts in the light most favorable to the trial court's judgment reveal that Scott and Libby were high school sweethearts in their hometown of Plymouth, Indiana. Upon graduation from high school, Scott attended Michigan State University on a basketball scholarship. Libby attended Purdue University in Indiana and paid in-state tuition. During the summers, both Scott and Libby returned to Plymouth. Scott has conceded that he considered himself an Indiana resident when he was attending college and playing basketball in Michigan.

At the end of his four years of college eligibility, Scott was drafted by the Milwaukee Bucks and moved to Wisconsin to play basketball. In January of 1987, Libby quit her job in Indianapolis and moved to Milwaukee to be with Scott. Scott has conceded

**2.** The dissent laments the result because with the delay of the proceedings, the passage of time renders moot our conclusion that the Skiles at the inception of the proceedings were Florida residents. Libby is now an Indiana resident and Scott has transferred to Washington. The present state of affairs does not justify overlooking that Libby was *not* an Indiana resident when she filed the dissolution proceedings as required by law.

**3.** Although our decision renders moot the question of the reasonableness of the amount of the attorney fees award, it is hard to envision circumstances that would ever warrant the expenditure of a quarter of a million dollars in preliminary attorney fees to dissolve a marriage. Because of our reversal due to the lack of jurisdiction, we cannot proceed to fully examine the propriety of the award.

that he never considered himself a resident of Wisconsin but was there to play basketball. At the end of the 1987–88 basketball season, Scott and Libby moved back to Indiana.

Scott was then traded to the Indiana Pacers and the couple moved to Indianapolis. In 1989, Scott and Libby purchased their Brown County home on Sweetwater Lake in Nineveh, Indiana, and made it their permanent home. Over the years, the Skiles have made substantial improvements to their Brown County home, including having 1) reshingled the roof, 2) built a screened-in deck, 3) remodeled the kitchen, 4) purchased one-half of an adjoining lot, 5) installed air conditioning, and 6) spent $30,000.00 on a new dock and boat house. The family mementoes (and most of Scott's basketball trophies) have remained in the Brown County home. The home in Brown County has been decorated and maintained in a home-like atmosphere while the house in Florida has a stark and impersonal atmosphere. The Brown County home has never been rented and the Skiles have never considered selling it.

Although the Skiles purchased the house in Florida in 1991, after Scott landed the multi-year, multi-million dollar contract with the Orlando Magic, they continued to return to their "Indiana home" for every off-season and for special occasions. The Skiles returned to their Brown County home in February of 1993 (during the basketball season) to celebrate Sean's first birthday party. Several of Scott's and Libby's friends and relatives, all Indiana residents, attended the party. The Skiles have no family and few friends in Florida.

The Skiles had waited until they returned to Indiana to schedule their son's surgery. In 1992, Scott obtained an Indiana fishing license, stating under penalties of perjury that he was an Indiana resident. A 1993 article in *Sports Illustrated* reported Scott's statement regarding an event that took place when he had gone "home" to Indiana.

During the summer of 1993, negotiations had been initiated regarding Scott's future with the Magic and there was discussion that Scott might be traded to another team.

Scott told his best friend (an Indiana resident) that if he were to be traded from the Magic, the Skiles would sell their house in Florida. Scott informed the Magic that he would not bring his family back to Florida from Indiana unless he was assured that he would not be traded. After having been assured that Scott would have employment with the Magic for another year, the Skiles returned to Florida for the 1993–94 season. Less than two weeks later, marital discord escalated and Libby returned to Indiana with the children and filed for divorce.

Once acquired, domicile is presumed to continue. *State Election Board v. Bayh* (1988), Ind., 521 N.E.2d 1313, 1317. A person who temporarily leaves his place of residence with the intention of returning has not lost his original residence. *Id.* Self-serving statements of intent are not sufficient to establish that a new domicile has been acquired. *Id.* at 1318.

Since high school, Scott (and later his family) had established the pattern of leaving Indiana to play college or professional basketball during the basketball season and then returning to Indiana for the off-season. The evidence in the light most favorable to the judgment supports the trial court's determination that the Brown County home was the Skiles' permanent residence where they always returned when basketball season was over and had always intended to return when Scott's career as a basketball player was over. Thus, the evidence supports the trial court's judgment that Scott's and Libby's domicile remained in Indiana despite the purchase of the house in Florida. The trial court's decision is not clearly erroneous and should not be disturbed.

Additionally, and perhaps more importantly, the finding by the majority that, at the inception of the present proceedings, the Skiles were residents of Florida and not Indiana has become moot and works an extreme hardship on the Skiles' family which, without a doubt, has suffered and will continued to suffer as the result of the protracted litigation. Now that the majority has effectively dismissed the present dissolution proceedings, all Libby need do is refile in

Indiana and there can be little question that she now has been a continuous and bona fide resident of the State of Indiana for the previous six months. As noted by the majority, Florida has declined to exercise jurisdiction in favor of the instant Indiana proceedings. While it is not necessary that we take judicial notice of the fact that Scott now plays for the Washington Bullets, that fact makes Scott's claim that Florida is the better forum in which to litigate the dissolution less persuasive.

Finally, while I agree with the majority that it is hard to envision circumstances that would warrant the expenditure of a quarter of a million dollars in preliminary attorney fees (plus whatever fees Scott has incurred), there can be no reasonable doubt that the reasonable attorney fees incurred thus far by both parties have been enormous. However, the issue of attorney fees does not justify the majorities' disposition of this case which, considering the mootness of the jurisdictional issue, will render the reasonable attorney fees incurred in the jurisdictional contest, a total waste. All the majority decision accomplishes is the requirement that the Skiles send good money after bad in effecting their dissolution.

Moreover, even if the preliminary attorney fees awarded in the case are unreasonable, attorney fees awarded prospectively are much like a retainer, the reasonableness which is subject to review in later proceedings. *Kyle v. Kyle* (1991), Ind.App., 582 N.E.2d 842, 850, *trans. denied.* When preliminary attorney fees are later determined to be excessive, the payor spouse is entitled to a refund. *Id.* The preliminary attorney fees awarded in the present case, even if excessive, are not cause for reversal.

Indiana law recognizes that divorce litigation is harmful to the family, especially the children involved. *Lamb v. Wenning* (1991), Ind.App., 583 N.E.2d 745, 751, *modified on other grounds,* 600 N.E.2d 96. I am left with the firm conviction that we are making a mistake by requiring the Skiles to start dissolution proceedings over and prolong this ordeal which, without a doubt, will continue to exact an immeasurable personal cost upon the Skiles family.

Sufficient evidence of probative value supports the trial court's judgment that the Skiles had never relinquished their Indiana domicile when they temporarily moved to Florida for Scott to play basketball. We should not disturb the trial court's decision but instead should stand aside to permit the present proceedings to advance to the final hearing scheduled for February 9, 1995, and the earliest resolution possible. Therefore, I dissent.